IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| RODERICK WILLIAMS,<br>ANNIE FRANKLIN,<br>and VICKI ISOME, | *<br><br>* | |
| Plaintiffs, | * | |
| vs. | * | CASE NO. 4:09-CV-84 (CDL) |
| GOLD CAR LENDING, INC.<br>and GIL'S AUTO SALES, INC., | *<br><br>* | |
| Defendants. | *<br>* | |

O R D E R

Plaintiffs Roderick Williams, Annie Franklin, and Vicki Isome (collectively "Plaintiffs") brought this action against Defendants Gold Car Lending, Inc. and Gil's Auto Sales, Inc. (collectively "Defendants"), seeking to recover overtime compensation allegedly withheld from them by Defendants in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* Presently pending before the Court is Defendants' Motion for Summary Judgment (ECF No. 19). For the following reasons, Defendants' motion is denied.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* issue of *material* fact exists to

defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

PROCEDURAL BACKGROUND

Plaintiffs filed this action claiming that Defendants failed to pay them for overtime in violation of the FLSA. Compl., ECF No. 1. The Complaint named another Plaintiff, Telissa Humphrey, but she subsequently withdrew from this action. Stipulation of Dismissal of Plaintiff Telissa Humphrey, ECF No. 15. Defendants then filed the presently pending motion for summary judgment and a statement of material facts ("SMF"). Defs.' Mot. for Summ. J., ECF No. 19; Defs.' Statement of Material Facts to Which There is No Genuine Issue to be Tried, ECF No. 19-2 [hereinafter Defs.' SMF]. Plaintiffs subsequently responded to Defendants' motion and SMF. Pls.' Br. in Opp'n to Defs.' Mot. for Summ. J., ECF No. 22; Pls.' Resp. to Defs.' Statement of Material Facts, ECF No. 23 [hereinafter Pls.' Resp. to Defs.' SMF]. Plaintiffs' response to Defendants' SMF, however, either admitted Defendants' statement of fact or failed to provide any record citation to refute Defendants' SMF. *See generally* Pls.'

2

Resp. to Defs.' SMF. Local Rule 56 requires that each material fact be supported by a specific citation to the record. M.D. Ga. R. 56. Likewise, all material facts that are not specifically controverted by specific citation to the record are deemed admitted, unless otherwise inappropriate. *Id.* Therefore, since Plaintiffs failed to controvert any of Defendants' statements of fact with a specific citation to the record, the Court deems each paragraph of Defendants' SMF admitted.[1]

Plaintiffs did submit affidavits by all three Plaintiffs along with their response brief. Pls.' Br. in Opp'n to Defs.' Mot. for Summ. J., Williams Aff., ECF No. 22-1; Pls.' Br. in Opp'n to Defs.' Mot. for Summ. J., Isome Aff., ECF No. 22-2; Pls.' Br. in Opp'n to Defs.' Mot. for Summ. J., Franklin Aff., ECF No. 22-3. Plaintiffs, however, failed to cite their affidavits in response to Defendants' SMF. *See generally* Pls.' Resp. to Defs.' SMF. Therefore, the Court will not consider Plaintiffs' affidavits because Plaintiffs failed to follow Local Rule 56. *See Reese v. Herbert*, 527 F.3d 1253, 1268

---

[1]The Court notes that the 2010 Amendments to the Federal Rules of Civil Procedure went into effect after Plaintiffs submitted their response to Defendant's SMF. The amendment to Federal Rule of Civil Procedure 56 imposes a similar requirement to Local Rule 56 that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of the materials in the record." Fed. Rule of Civ. P. 56(c)(1)(A). The Rule further provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

3

(11th Cir. 2008) ("The proper course in applying Local Rule [56] at the summary judgment stage is for a district court to disregard or ignore evidence relied on by the respondent-but not cited in its response to the movant's statement of undisputed facts-that yields facts contrary to those listed in the movant's statement."). When a non-moving party fails to comply with Local Rule 56, the Court must consider the motion for summary judgment as if it were unopposed. *Id.* The moving party, however, still has the burden to demonstrate the absence of a genuine dispute of material fact. *Id; see also* Fed. Rule Civ. P. 56(e)(3) (noting that if a party fails to properly support an assertion of fact the Court may grant summary judgment if the motion and supporting materials show that the movant is entitled to it). The Court must determine whether that burden has been satisfactorily discharged by reviewing "all of the evidentiary materials submitted in support of the motion for summary judgment." *Reese*, 527 F.3d at 1268-69 (internal quotation marks omitted). The Court has a duty to "review the movant's citations to the record to determine if there is, indeed, no genuine [dispute] of material fact." *Id.* at 1269 (internal quotation marks omitted).

## FACTUAL BACKGROUND

Viewed in the light most favorable to Plaintiffs, the record reveals the following.

Defendant Gil's Auto Sales, Inc. ("Gil's") sells automobiles and Defendant Gold Car Lending, Inc. ("Gold Car") provides in-house financing for automobile purchases, referred to as a "buy here, pay here" car lot. Plaintiff Williams ("Williams") began working at Gil's as a temporary employee in January 2008 and became a regular employee in April 2008. Plaintiff Isome ("Isome") was hired in February 2007. Plaintiff Franklin ("Franklin") was hired in May 2007. All three Plaintiffs were terminated on August 1, 2008. Plaintiffs filed complaints with the United States Department of Labor Wage and Hour Division ("DOL") alleging that Defendants did not pay Plaintiffs overtime. The DOL found no violations of the overtime provisions of the FLSA for the time period between January 18, 2007 and January 15, 2009. Since the nature of each Plaintiff's job duties is relevant to a determination of whether the Plaintiff is entitled to overtime compensation, the Court describes those job duties below.

While working for Defendants, Williams had a number of responsibilities. Williams testified that he collected on delinquent accounts, which involved contacting customers with late payments and encouraging them to make their payments. Defs.' Mot. for Summ. J. Ex. 1, Williams Dep. 26:1-11, ECF No. 19-4. If a customer refused to return a car after failing to make a payment, Williams went out into the field and tried to find the automobile. *Id.* at 28:4-12.

Williams collected payments from customers in the field when told to do so. *Id.* at 28:15-18. Williams sold automobiles as well. *E.g., id.* at 28:23. In conjunction with the sales he made, Williams would "load deals" onto the computer. *Id.* at 33:2-8. Williams did a variety of other tasks while working for Defendants, including: washing cars, detailing cars, transferring cars back and forth between Defendants' car lots, getting gas, taking bank deposits to Gil's owner, and taking time cards to another Gil's employee. *Id.* at 37:20-38:5. Williams testified that he spent "about the same" amount of time collecting and selling, and he split his time "[a]bout 50/50" between the two assignments. *Id.* at 35:5-8, 9-10. Defendants paid Williams hourly. *Id.* at 30:16-18. Defendants also paid Williams a bonus and commission on cars sold and collection percentages. *Id.* at 30:19-22. Williams, however, distinguished his compensation from that of car salesmen, declaring that "we didn't get nowhere close to that." *Id.* at 31:11-12. While salesmen "got a lot of money for selling cars[,] [Williams] didn't get that much." *Id.* at 31:14-15. Williams's compensation for collections was based on the amount the store collected and not what Williams personally collected. *Id.* at 31:19-22.

Like Williams, Isome "wore a lot of different hats at Gil's." Defs.' Mot. for Summ. J. Ex. 2, Isome Dep. 31:17-18, ECF No. 19-5. Isome's job duties ranged from "collections to sales to chasing

6

vehicles to running accounts[.]" *Id.* at 31:16-17. Isome chased accounts and repossessed vehicles, which entailed locating a vehicle and either repossessing the car or collecting payment from the delinquent customer. *Id.* at 74:1-15. Isome also sold cars. *Id.* at 48:23. When making a sale, Isome verified the customer's application and sometimes approved the loan or purchase. *Id.* at 49:6-12. Isome kept folders on the customers that visited the store, and Defendants required her to file the folders and make cards for the folders. *Id.* at 72:8-12. When asked how much of her typical day she spent on collections, Isome replied that the percentage was "[p]robably 80 percent. Well, let me rephrase that, because it'd just depend. I can't say how much it was because it'd just depend on what was going on that day." *Id.* at 48:8-13. She explained that "[i]f I had to help sell cars, I sold cars. If I had to help collect, I collected. If I had to take payments, I took payments. If I had to go and fill cars up with gas, I went and filled cars up with gas." *Id.* at 48:13-17. According to Isome, the average number of hours she worked selling cars or collecting varied depending on the week. *Id.* at 73:13-19. Isome was paid ten dollars an hour. *Id.* at 53:4. Isome also received a commission based on sales and collections. *Id.* at 53:10-12. She was paid a percentage based on each vehicle sold. *Id.* at 53:13-16. Isome received a bonus if the store collectively sold

a certain number of cars over the number of cars sold in the same quarter the previous year. *Id.* at 54:13-20.

Franklin's responsibilities included collecting and calling on accounts. Defs.' Mot. for Summ. J. Ex. 3, Franklin Dep. 15:2-9, ECF No. 19-6. She also took payments from customers. *Id.* at 15:2-3. Franklin made files for customers. *Id.* at 15:3. Franklin sold cars as well. *Id.* When asked what she considered to be her primary job duty and what she spent the majority of her day doing, Franklin testified that "I'd collect pretty much–I'd collect every day." *Id.* at 15:13-17. Franklin spent about half of her day collecting and calling accounts. *Id.* at 15:17-19. Franklin only sold cars "[e]very so often." *E.g., id.* at 15:4-5. Franklin was paid hourly. *Id.* at 24:15-20. Franklin received a bonus if the group sold a certain number of cars for the quarter. *Id.* at 24:21-25:10. Franklin received this bonus twice. *Id.* at 31:9-11. Franklin did not receive commission based on personal sales but did get a commission based on the group's performance. *Id.* at 69:22-70:4. If Franklin sold a car, she did not know what her commission would be. *Id.* at 70:11-14. Franklin also received a commission if the collections goal was met. *Id.* at 52:21-24.

### DISCUSSION

The FLSA requires that employers pay employees one and one-half times the regular rate of pay for any hours worked in excess of forty

8

hours per week. 29 U.S.C. § 207(a)(1). Defendants claim that Plaintiffs are exempt employees and not entitled to overtime compensation under the FLSA. Defendants assert that Plaintiffs fall into the exemption for both automobile salesmen and outside salesmen. Mem. of Law in Supp. of Defs.' Mot. for Summ. J. 1, ECF No. 19-1 [hereinafter Defs.' Mem.]. Defendants argue that if Plaintiffs are not exempt, the statute of limitations restricts the claims of Isome and Franklin to two years prior to the filing of this action. *Id.* at 23.

**I. Outside Salesman Exemption**

The overtime compensation requirement of the FLSA does not apply to "any employee employed . . . in the capacity of outside salesman." 29 U.S.C. § 213(a)(1). An "outside salesman" is defined in 29 C.F.R. § 541.500(a) as "any employee: (1) [w]hose primary duty is: (i) making sales within the meaning of section 3(k) of the Act . . . and (2) [w]ho is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty." 29 C.F.R. § 541.500(a). The employee's primary duty must be the performance of exempt work, and "primary duty" means "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). The amount of time spent

9

performing exempt work is a useful guide, but not the sole test, for determining whether the exempt work is the primary duty of the employee. 29 C.F.R. § 541.700(b). An employee who spends more than 50% of his time performing exempt work will generally satisfy the primary duty requirement. *Id.* The primary duty of the employee must be sales, defined in the FLSA as "any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition." 29 U.S.C. § 203(k). A sale within the meaning of section 3(k) includes the transfer of title to tangible property. 29 C.F.R. § 541.501(b). An employee's "work performed incidental to and in conjunction with the employee's own outside sales or solicitations, including incidental deliveries and collections, shall be regarded as exempt outside sales work." 29 C.F.R. § 541.500(b). The burden is on the employer to prove that an employee is an outside salesman. *Stevens v. SimplexGrinnell, LLP*, 190 F. App'x 768, 771 (11th Cir. 2006) (per curiam).

Defendants claim that each Plaintiff had the primary duty of making sales, and Plaintiffs customarily and regularly engaged in sales away from Defendants' car dealership. Defendants do not allege that Plaintiffs actually sold cars anywhere other than Defendants' car lot. Therefore, in order for Plaintiffs to have been regularly and customarily engaged away from Defendants' place of business performing sales, Plaintiffs must have engaged in another activity that qualifies

10

as outside sales. Defendants argue that Plaintiffs' off-premises collections should be regarded as outside sales activity because "every time they visited a customer to solicit renewal of payments on a car, and every time they made a phone call to solicit renewal of payments on a car, they were selling." Defs.' Mem. 16. Given the nature of Defendants' "buy here, pay here" car lot, Defendants assert that Plaintiffs solicited the renewal of payments and engaged in sales when Plaintiffs attempted to get customers to make payments while collecting and chasing accounts in the field. *Id.* at 16-17. Defendants analogize Plaintiffs' job duties to those of "debit men"—insurance salesmen that must call on insurance contracts that have already been secured, collect the premiums, and obtain renewal of the policies. *Id.* at 10, 16.

The Court finds that Plaintiffs' collection duties do not constitute sales in this case. Attempting to convince a delinquent customer to make a payment owed to Defendants under a previous sale is not a new sale of a vehicle. The customer's choice between making a payment or having the vehicle repossessed is not a decision to purchase the vehicle for a second time. Further, sales of insurance renewal contracts by debit men can be distinguished from Plaintiffs' collection activities. Insurance salesmen solicit the renewal of insurance policies and obtain new contracts for coverage for the subsequent year. *See Montalvo v. Tower Life Bldg.*, 426 F.2d 1135,

1142 (5th Cir. 1970) (finding the renewal of an insurance contract a sale under the FLSA because the sale of a renewal, like an initial insurance contract, is a sale of insurance coverage for a specified time).[2] In contrast, Plaintiffs collected payments for existing contractual obligations and did not solicit new contracts for additional time periods. Therefore, the Court rejects Defendants' argument that Plaintiffs' collection activities in this case are properly considered sales under the FLSA.

Defendants also argue that Plaintiffs' off-premises collections should be considered exempt work because the collections were incidental to Plaintiffs' sales activities. To be considered exempt work, however, collections must be incidental to the employee's *outside* sales activities. *See* 29 C.F.R. § 541.501(b) ("[W]ork performed incidental to and in conjunction with the employee's own outside sales or solicitations, including deliveries and collections, shall be regarded as exempt outside sales work."). Here, all of Plaintiffs' sales occurred on Defendants' car lot, and therefore, any collection duties were not incidental to outside sales. Accordingly, the Court concludes that Plaintiffs cannot qualify under the outside salesman exemption because: (1) Plaintiffs' collection activities in this case are not themselves properly considered sales; and (2)

---

[2]The Eleventh Circuit adopted all decisions of the former Fifth Circuit rendered before October 1, 1981, as binding precedent. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Plaintiffs did not engage in any outside sales work, and thus, their collections on accounts cannot be incidental to outside sales.

## II. Automobile Salesman Exemption

Defendants alternatively claim Plaintiffs fall into the FLSA exemption for automobile salesmen as set forth in 29 U.S.C. § 213(b)(10)(A). The exemption applies to "any salesman . . . primarily engaged in selling . . . automobiles . . . if he is employed by a nonmanufacturing establishment primarily engaged in the business of selling such vehicles . . . to ultimate purchasers." 29 U.S.C. § 213(b)(10)(A). An automobile salesman is "an employee who is employed for the purpose of and is primarily engaged in making sales or obtaining orders or contracts for sale of the vehicles." 29 C.F.R. § 779.372(c)(1). A salesman performs exempt work when doing work "incidental to and in conjunction with the employee's own sales or solicitations, including incidental deliveries and collections." *Id.* For a salesman to be primarily engaged in sales work, "over 50 percent of the salesman's . . . time must be spent in selling . . . vehicles." 29 C.F.R. § 779.372(d). The employee must also be employed at an establishment that is not engaged in manufacturing and must be primarily engaged in the business of selling automobiles. 29 C.F.R. § 779.372(b)(1)(i)-(ii). An establishment primarily engages in selling automobiles if "over half of the establishment[']s annual dollar volume of sales made or

13

business done" comes from selling vehicles. 29 C.F.R. § 779.372(d). The Court assumes for the purposes of this Order that Plaintiffs worked at a nonmanufacturing establishment primarily engaged in selling vehicles.[3]

Defendants claim that Plaintiffs primarily engaged in selling automobiles while working for Defendants. Defendants again argue that as a consequence of the "buy here, pay here" nature of Defendants' car dealership, Plaintiffs must "effectively re-sell on every collection," and collections should be considered sales. Defs.' Mem. 10. The Court finds that under the factual circumstances presented in the present record, collections cannot be considered sales under the automobile salesman exemption for the same reasons given in the Court's previous discussion of the outside salesman exemption.

Defendants also assert that Plaintiffs' collections were incidental to their sales and therefore included as exempt work. *Id.*

---

[3] Plaintiffs argue that Isome and Franklin worked for Gold Car—the financing company—and not Gil's—the car lot. As a result, Plaintiffs contend that Isome and Franklin were not employed by a nonmanufacturing establishment primarily engaged in selling cars. Pls.' Br. in Opp'n to Defs.' Mot. for Summ. J. 6-11. The Court notes that Plaintiffs' argument contradicts Plaintiffs' previous filings with the Court. In their Complaint, Plaintiffs alleged that Gil's employed and compensated each Plaintiff interchangeably with Gold Car. Compl. ¶¶ 8-9. Plaintiffs also claimed that Defendants were joint employers under the FLSA. *Id.* ¶ 12. The resolution of this issue, however, does not alter the Court's holding today because the Court concludes that genuine disputes of material fact exist as to whether Plaintiffs primarily engaged in selling vehicles.

14

at 8-9. All Plaintiffs admittedly engaged in some sales activity. *E.g.*, Williams Dep. 28:23; Isome Dep. 48:23; Franklin Dep. 15:3. Viewing the facts in the light most favorable to the non-moving party, however, the Court cannot conclude as a matter of law that Plaintiffs primarily engaged in sales while working for Defendants. The present record demonstrates that Plaintiffs had a variety of job responsibilities. Genuine disputes of material fact exist as follows.

Genuine disputes of material fact exist as to whether Williams primarily engaged in sales. Williams testified that he spent about equal amounts of time collecting and selling and that his time was split about 50/50 between the two job duties. Williams Dep. 35:5-8, 9-10. He also spent time doing a variety of other tasks while working for Defendants. *See id.* at 37:20-38:5. Between collections and other tasks, a reasonable factfinder could conclude that Williams did not spend over 50% of his time engaged in sales. *See* 29 C.F.R. § 779.372(d) (requiring the major part or over 50% of the salesman's time be spent selling vehicles). Further, although Defendants claim that Williams's collections were incidental to sales, Defendants do not point the Court to any evidence that Williams's collections were incidental to his *personal* sales so that his collections should be considered exempt work. *See* 29 C.F.R. § 779.372(c)(1) (explaining that only "[w]ork performed incidental to and in conjunction with the employee's *own* sales or

15

solicitations" can be considered exempt work). Therefore, the Court cannot conclude as a matter of law that Williams was primarily engaged in sales.

The present record demonstrates that genuine disputes of material fact also exist as to Plaintiff Isome's job duties. Isome first estimated that she spent 80% of her time collecting, but later testified that she could not readily determine an actual percentage because her responsibilities varied depending on the week. Isome Dep. 48:8-19. Therefore, the present record does not demonstrate that Isome, as a matter of law, spent a majority of her time selling vehicles. Further, Defendants again fail to connect Isome's collections to her *personal* sales activity. *See* 29 C.F.R. § 779.372(c)(1).

Finally, the record demonstrates that genuine disputes of material fact exist regarding whether Plaintiff Franklin primarily sold cars. Franklin testified that she considered collections and calling on accounts to be her primary job duty, and she collected on payments every day for about half of her day. Franklin Dep. 15:13-19. According to Franklin, she only sold cars "[e]very so often." *E.g.*, *id.* at 15:4-5. Further, as with Isome and Williams, Defendants fail to link Franklin's collections to her particular sales. In light of Franklin's deposition testimony that she engaged in minimal sales activity and the lack of connection demonstrated by Defendants between

16

Franklin's personal sales and her collections, a reasonable factfinder could conclude that Franklin did not primarily engage in sales.

Defendants point to the commission and bonus payments Plaintiffs received for selling cars to support the contention that Plaintiffs fall within the exemption. Automobile salesmen receive a substantial part of their remuneration from commission and "are more concerned with their total work product than with the hours performed." *Brennan v. Deel Motors, Inc.*, 475 F.2d 1095, 1097 (5th Cir. 1973). Plaintiffs received a bonus based on quarterly group sales. Williams Dep. 30:19-22; Isome Dep. 54:13-20; Franklin Dep. 24:21-25:10. Defendants also paid Plaintiffs a commission based on group sales. Franklin Dep. 69:22-70:4; *see also* Isome Dep. 54:21-25. The record, however, shows that Plaintiffs were also paid an hourly wage. Williams Dep. 30:16-18; Isome Dep. 53:4; Franklin Dep. 24:15-20; c*ompare Deel*, 475 F.2d at 1096 (noting service salesmen were compensated by salary and commission payments when the investigation of the defendant began, but service salesmen had incentive remuneration based on strait commission and payments for selling products that were being promoted by defendant at the time the court rendered a decision). Therefore, the present record does not support the conclusion that Plaintiffs' compensation was substantially based on sales success. *See Deel*, 475 F.2d at 1098 (finding service

salesmen fall within the exemption because "[t]heir remuneration is substantially based on their success in [sales] endeavors.").

## III. Statute of Limitations

Defendants argue that Plaintiffs presented no evidence of a willful violation of the FLSA and therefore, Isome and Franklin can only recover for FLSA violations occurring during the two years immediately preceding the filing of this action. Defs.' Mem. 22-23. FLSA claims must be brought "within two years after the cause of action accrued" unless the "cause of action aris[es] out of a willful violation." 29 U.S.C. § 255(a). The statute of limitations is three years for a willful violation. *Id.* A violation is willful if the employee can prove "by a preponderance of the evidence that his employer either knew that its conduct was prohibited by the statute or showed reckless disregard about whether it was." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1280 (11th Cir. 2008) (internal quotation marks omitted). Defendants claim that the DOL found no FLSA violations at Gil's, and thus, any violations of the FLSA were not knowing or reckless. Defs.' Mem. 22. Further, Defendants urge that although Defendants knew they did not pay Plaintiffs overtime, that is not sufficient to show Defendants knew they violated the FLSA. *Id.* Defendants, however, ignore that they paid Franklin one hour of overtime when Defendants fired her. Franklin Dep. 33:12-22. This evidence, along with the other circumstances surrounding Defendants'

18

conduct, creates a genuine dispute of material fact as to whether Defendants knew Franklin and Isome, having similar job duties, should have been paid overtime under the FLSA or showed reckless disregard regarding the FLSA's overtime provisions. *See Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1163 n.3 (11th Cir. 2008) (assuming "that the decision about whether the employer acted willfully for purposes of determining the statute of limitations period is to be decided by the jury.").

CONCLUSION

As discussed above, the Court finds that Plaintiffs do not fall within the outside salesman exemption of the FLSA as a matter of law. The Court also finds that genuine disputes of material fact exist as to whether Plaintiffs primarily engaged in automobile sales under the automobile salesman exemption of the FLSA. Finally, the Court finds that genuine disputes of material fact exist as to whether Defendants committed willful violations of the FLSA. Accordingly, Defendants' Motion for Summary Judgment (ECF No. 19) is denied.

IT IS SO ORDERED, this 13th day of December, 2010.

    S/Clay D. Land
      CLAY D. LAND
UNITED STATES DISTRICT JUDGE